# CHARLESTON.

STATE v. WILLIS JOHNSON

(No. 5702)

Submitted November 22, 1927.   Decided November 29, 1927.

1.  CRIMINAL LAW—*Where Inference Favorable to Accused May
    Reasonably be Drawn From Evidence, Jury May Not Adopt
    Unfavorable One.*

    Where two inferences may be drawn from a circumstance,
    one of which is favorable and the other unfavorable to an
    accused, the jury may not adopt the inference against him,
    where the one in his favor is reasonable under all the evidence
    in the case. *State* v. *Gill*, 101 W. Va. 242.

    (Criminal Law, 16 C. J. § 1560 [Anno].)

    (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not
    part of Syllabi.)

Error to Circuit Court, Barbour County.

Willis Johnson was convicted of owning, operating, and
having an interest in a moonshine still and he brings error.

*Judgment reversed; verdict set aside;
new trial awarded.*

J. *Blackburn Ware* and *Paul B. Ware,* for plaintiff in error.
*Howard B. Lee,* Attorney General, and J. *Luther Wolfe,*
Assistant Attorney General, for the State.

HATCHER, PRESIDENT:

Joe Newman, Jonah Parsons, William Norris, and the de-
fendant Willis Johnson were jointly indicted for owning,
operating and having an interest in a moonshine still. The
first two admitted their guilt. The defendant plead not
guilty, but was found guilty by the jury. He contends that
the evidence does not support the verdict.

The evidence of the State proper to consider on the ques-
tion of his guilt, is as follows: Some officers came upon New-
man, Parsons and defendant in the woods, at a still in opera-
tion; defendant was seated about eight feet from the still

doing nothing; Newman and Parsons were closer to the still; an officer drew a pistol and commanded the three to put up their hands; Norman and Parsons submitted to arrest, but defendant ran, and when arrested a few hours later denied having been at the still.

The defendant admitted at the trial that he was at the still when the officer came, but denied having any interest in or connection with the still. He explained that he had been on a ridge above the still gathering chestnuts when Newman and Parsons, who were his friends, called to him to come down; that he went to the still in response to their call, was merely talking to them when the officers arrived, and ran when the officer drew his pistol because he was afraid there would be shooting. Newman and Parsons supported the defendant's testimony in every particular. They admitted ownership of the still and testified that defendant had no interest in it and had not operated or assisted in its operation. A number of witnesses testified to defendant's previous good character.

As no witness for the State saw defendant do anything, or heard him say anything indicating ownership, operation or possession of the still, the State's case rests entirely on his presence at the still and his alleged denial that he was there. The fact that he ran when the officer drew his pistol is of little evidential weight against him when we consider that Newman and Parsons, admittedly guilty, did not run under the same circumstance. The denial, while not politic or creditable to him, may be attributed to fear and his desire to escape detention. It does not necessarily indicate guilt. Mere presence at a still, unexplained, may be sufficient to convict; but mere presence is not enough in all cases, as anyone when rambling through the woods in some localities, may stumble on a still. The explanation of defendant is perfectly plausible. No one testified that he was not on the ridge above the still picking chestnuts; no one said Newman and Parsons did not call to him to come down; no one even intimated that he did more at the still than converse with Newman and Parsons. No explanation is made why they should exonerate him, if he were guilty. The State did not attack the good

reputation given defendant by his neighbors. It did not connect him in any way with the whiskey business, although it made desperate efforts to do so.

Under the evidence the jury could be certain of only one fact—that like the old dog Tray, the defendant was caught in bad company. If his evidence be given any consideration, then his presence at the still raises merely a suspicion of guilt. Mere suspicion will not sustain a conviction. On the contrary, every reasonable hypothesis of his innocence must be indulged. *State* v. *Hunter,* 103 W. Va. 377.

It is a shibboleth of our criminal jurisprudence that ninety-nine guilty should go unpunished rather than that one innocent should suffer. The jury is admonished in every criminal trial to give the accused the benefit of all reasonable doubt. Here the weight of evidence favors the defendant. The inferences from the evidence which are favorable to the accused are tenable. If those inferences be entertained, the evidence does not warrant conviction. Under such circumstances a jury will not be permitted to draw only such inferences as are unfavorable to the accused and base its verdict thereon. "Though it is the province of the jury to find the facts, they may not deduce from a given or admitted state of facts the more unfavorable deduction unless the favorable deduction is excluded as unreasonable." *Cromeans* v. *State* (Tex.), 129 S. W. 1129; *Stark* v. *Com.,* 116 Va. 1039; *State* v. *Gill,* 101 W. Va. 242.

The judgment of the lower court will accordingly be reversed, the verdict of the jury set aside and the defendant awarded a new trial.

*Judgment reversed; verdict set aside;*
*new trial awarded.*